Appeal No. 23-10129-CC

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## DONNA TEALER

**Appellant**,

v.

## R. BYARS AND A. CATLIN

**Appellees.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
U.S.D.C. NO.: 1:22-CV-02639 LMM
BRIEF OF APPELLANT**

---

**Attorney for Appellant**
Ralph Goldberg
Georgia Bar No. 299475
**Goldberg & Cuvillier, P.C.**
3469 Lawrenceville Hwy., Suite 102
Tucker, Georgia 30084
Telephone:  (770) 670-7343
Facsimile:   (770) 670-7344

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

DONNA TEALER

APPEAL NO. 23-10129-CC

Pursuant to 11th Cir. R. 26.1-1(a)(3), the following is a complete list of trial judges, attorneys, persons, associations, firms, partnerships, or corporations that have an interest in the outcome of this particular case:

1) R. Byars- (Defendant- Appellee);

2) A. Catlin- (Defendant- Appellee);

3) Rebecca J. Dobras (Attorney for Defendants- Appellees);

4) Goldberg & Cuvillier, P.C. (Counsel for Plaintiff- Appellant);

5) Ralph Goldberg (Counsel for Plaintiff- Appellant);

6) Hon. Leigh Martin May (District Court Judge).

I hereby certify that I am aware of no publicly traded company that has an interest in this appeal.

Goldberg & Cuvillier, P.C.                     /s/ Ralph Goldberg
3469 Lawrenceville Hwy., Ste. 102     Ralph Goldberg
Tucker, GA 30084                               Georgia Bar No. 299475
(770) 670-7343                                    Attorney for Appellant
(770) 6707344
attorneygoldberg@hotmail.com

## STATEMENT FOR ORAL ARGUMENT

This case is a companion case to (David) <u>Tealer v. Byars</u>, 22-14096. It requires the Court to flesh out the standards concerning the reasonableness of the arresting officer's conduct, see <u>Paez v. Mulvey</u>, 915 F.3d 1276, 1286 (11th Cir. 2019) and <u>District of Columbia v. Wesby</u>, 138 S. Ct 577, 586 (2018). "When the arresting officer actually see knowledge of fact and circumstance conclusively establishing an affirmative defense." <u>Williams v. Sirmon</u>, 307 Fed. Appx. 354, 358 (11th Cir. 2009).

Respectfully, oral argument will aid in that process.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement................i

Statement for Oral Argument…………………………………………………..….. ii

Table of Contents and other Authorities………………......………………………iii

    A. Table of Cases ……………….....................................………………iv

    B. Table of Other Authorities…………………….....................……….vi

I. Statement of Jurisdiction…………………………......……………………  1

II. Statement of Issues Presented for Review ………………….....………….  1

III. Statement of the Case…………………….....……………………….  1

    A. Course of Proceedings and Dispositions In The District Court........ 1

    B. Statement of the Standard of Review ……………………………....2

    C. Statement of the Facts……………………......…………………  2

IV. Summary of the Argument…………………………………………  11

V. Argument and Citation of Authority…………………………….....…  16

A. DEFENDANT BYARS DELIBERATELY MISLED THE MAGISTRATE
BY MISSTATING THE FACTS OR BY OMITTING CRUCIAL FACTS,
WHEN HE KNEW THE ARREST LACKED ARGUABLE PROBABLE
CAUSE ……………………………………………………………..16

B. DEFENDANT CATLIN IS LIABLE BECAUSE OF HIS INVOLVEMENT
IN THE PROSECUTION OF PLAINTIFF AND HAS NO QUALIFIED
IMMUNITY……………………………………………………………..20

C. THE COURT ERRONEOUSLY DISMISSED THE GEORGIA
CONSTITUTIONAL CLAIM…………………………………………..25

VI. CONCLUSION ………………………………………………………..25

VI I. Certificate of Compliance With Rules 32 (a)……………………………27

VIII. Certificate of Service ……………………………………………………28

## TABLE OF CASES AND OTHER AUTHORITIES

### A. CASES

Ancata v. Prison Health Services, Inc. 769 F.2d 700 (11th Cir. 1985).

Baxter v. Robert, 54 F 4th 1241 (11th Cir. 2022)

Brown v. Crawford, 906 F.2d 667 (11th Cir. 1990)

Carter v. Butts County, 821 F.3d 1310 (11th Cir. 2016)

Carter v. Butts County, 821 F.3d 1310 (11th Cir. 2016)

Chesser v. Sparks, 248 F. 3d 1117 (11th Cir. 2001)

Darlow v. Babineck, 2022 WL 15345444 (11th Cir. 2022)

Doe v. Swearinger, 51 F. 4th 1295, 1302 (11th Cir. 2022)

Franks v. Delaware

Glenn v. State, 310 Ga. 11 (2020)

Henderson v. State, 95 Ga. App. 830 (1957)

Hollenshed v. Shadruk, 95 Ga. App. 88 (1957)

Holloman ex rel. Holloman v. Harland, 370 F 3d 1252 (11th Cir. 2004)

Hunter v. City of Leeds, 941 F.3d 1265 (11th Cir. 2019)

Keating v. City of Miami, 598 F.3d 753(11th Cir. 2010)

Patel v. State, 279 Ga. 750 (2005)

Roberson v. Gwinnett County, 2022 WL 1415938 (N.D. 2022)

Roy v. Ivy, 53 F. 4th 1338 (11th Cir. 2022)

Salvato v. Miley, 790 F. 3d 1286 (11th Cir. 2015)

Taylor v. Riojas, 141 S. Ct. 52 (2020)

Washington, v. Howard, 25 F 4th 891 (11th Cir. 2022)

Williams v. United States, 314 Fed. Appx. 253 (11th Cir. 2009)

## B. OTHER AUTHORITIES

Prosser and Keaton on Torts, (5th Ed. 1984)

## I. STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C.§1291, as the Court below issued a final judgment.

## II. STATEMENT OF ISSUES PRESENTED FOR REVIEW

1) Did the District Court err in determining on a motion to dismiss, that Plaintiff had not stated a claim for malicious prosecution against Defendant Byars in light of <u>Carter v. Butts County</u>, 821 F.3d 1310 (11th Cir. 2016).

2) Did the District Court err in determining on a motion to dismiss that Plaintiff had not stated a 4th Amendment violation of Plaintiff's rights under <u>Franks v. Delaware</u> when Defendant Byars intentionally omitted facts from the warrant that would have negated probable cause?

3) Did the District Court err in determining on a motion to dismiss that Plaintiff had not stated claims against Defendant Catlin when he took an active part in instigating or encouraging the Plaintiff's prosecution?

## III. STATEMENT OF THE CASE

## A. COURSE OF PROCEEDINGS AND DISPOSITION IN THE DISTRICT COURT

Plaintiff filed her complaint on July 1, 2022 (R1-1). She amended her complaint (R 1-10). Defendants filed a motion to dismiss the original complaint (R-8) and the amended complaint (R1-14). The motion to dismiss for failure to state a claim was granted (R -19), [1]judgment was entered (R1-20) and Plaintiff filed a timely appeal. (R 1-22). The state claim was dismissed without prejudice (R 1-19-26)

## B. STANDARD OF REVIEW

The Court reviews de novo a district court's grant of a motion to dismiss pursuant to F.R.C.P. 12 (b)(6) for failure to state a claim. <u>Roy v. Ivy</u>, 53 F. 4th 1338, 1381 11th Cir. 2022).

Thus, the Court accepts "the factual allegations in the complaint as true and constru[es] them in a light most favorable to the Plaintiff." <u>Doe v. Swearinger,</u> 51 F. 4th 1295, 1302 (11th Cir. 2022).

## STATEMENT OF THE FACTS

In Plaintiff's amended complaint (R 1-10), she alleged a claim of malicious prosecution against Defendant Byars, and Defendant Catlin (R 1-10) along with a claim of illegal arrest because of a <u>Frank v. Delaware</u>, claim.

---

[1] The state claim was dismissed without prejudice (R1-19-26).

She alleged that she was arrested pursuant to a warrant secured by Defendant Byars in Magistrate Court (R1-10-14) after his original warrant application to the Superior Court had been turned down. (R1-10-14). She was therefore arrested pursuant to a warrant for false imprisonment and misdemeanor battery (R1-18-15). The false imprisonment charge was dismissed id.[2]

She alleged that she had made a citizen's arrest of Mr. Mendez because he was committing the offense of criminal trespass (Id.).  She alleged she had delivered Mr. Mendez to her son, a licensed police officer and that Mr. Mendez was turned over to Mr. Daniels upon his arrival. (R1-10-16).

She alleged that Mr. Byars had taken out the warrant maliciously and she had been seized pursuant to legal process (R1-18)  She alleged a lack of arguable probable cause (R1-10-14 (para 3), R1-10-16(para 40). The misdemeanor charge remains deadlocked.

She further alleged a Franks v. Delaware violation (R1-1-19) and a claim under the Georgia Constitution (R1-1-20) against Defendant Byars (R1-10-20).

The Exhibits attached to the complaint showed what Mr. Byars knew when he went to secure the Magistrate Court warrant (R1-10-2 page 1). He knew that she had "not hired Mr. Mendez's employer" Id. He knew that David Tealer did not

---

[2] The misdemeanor charge remains dead docketed

have his weapon pointed at Mr. Mendez id. page 2 the whole time. Id. Mr. Byars

talked to Mr. Mendez who told him:

> Carlos advised that he told the subjects
> in English that he was working for Scott
> (Delroy) and that he was doing roofing,
> but he believe that David did not under-
> stand him.[3]

Id. at page 2. He repeated the same comment twice at page 3.  Mr. Byars knew Mr.

Mendez might not be the most truthful witness. Mr. Mendez's statement that David

Tealer struck him was made up. Id. at page 4.

The investigation reveals that a number of neighbors helped Plaintiff detain

Mr. Mendez. Id. at page 3, at page 4, at page 8. Indeed he spoke to two neighbors,

Id. at 10, 11, who both identified Mr. Mendez's conduct as suspicious See R1-10-

10.  Mr. Byars knew that Plaintiff had claimed she acted to perform a citizen's

arrest. Id. at page 5.

He knew that the officer on the scene "told him it was a misunderstanding

that the family thought he was there to steal." Id. at page 7.

The affidavit in support of the Magistrate application for a Magistrate

warrant (R1-10-4) page 3 accuses Plaintiff of the offense of false imprisonment.

He specifically states that Plaintiff did "detain said person without legal authority"

---

[3] At page 4, Mr. Byars twice says Mr. Mendez is unintelligible.

despite knowing that Plaintiff was performing a citizen's arrest. He says nothing about a misunderstanding, he says that the employee was employed at the location without saying that Plaintiff did not know this. He stated that David Tealer kept a gun on Mr. Mendez, the entire time which is untrue. He stated that David Tealer was "not on duty" which is untrue. He makes no reference to the neighbors who were present detaining Mr. Mendez (and who were not arrested) and he made no mention that the officer at the scene refused to arrest Plaintiff.

The amended complaint amplified that facts: Plaintiff had no reason to suspect anyone was on roof of her house (R1-10-5). In particular note (R1-10-7)

> Officer Daniel told Mr. Mendez that it was a "misunderstanding that while he did not know who we were, the Plaintiff and Mr. Franks did and knew who he was and believed he was burglarizing Plaintiff.

Plaintiff also alleged a claim against Defendant Catlin since he had the power, authority, and latitude to direct and redirect the case correctly (R1-10-11-12 and R1-10-13 and R1-10-16).

Plaintiff alleged in paragraph 38 of her complaint (R1-10-15) that she had performed a citizen's arrest and (paragraph 39) that she had delivered Mendez to the police. Of the complaint (R1-10-16) specifically noted:

> Each Defendant actually had knowledge of facts and circumstances set out above which conclusively established affirmation

defense [sic.]...or even [arguable] probable
cause.

Indeed as Defendant Byars notes at page 5, (R1-10-Ex. B) in the statement that she

provided by email, Plaintiff noted that Mr. Mendez was a trespasser, explained

why she thought so and specifically stated:

> Under Ga. Code 17-4-60, I have a right
> to arrest an offender of the offense was
> committed in my presence. It was (Id. at page 6)

## IV. SUMMARY OF THE ARGUMENT

1) Defendant Byars lacked arguable probable cause to arrest Defendant for false

imprisonment under Carter v. Butts County, 821 F.3d 1310 (11th Cir. 2016) when

he knew that because Plaintiff had performed a citizen's arrest under former

O.C.G.A. §17-4-60 that Plaintiff did not lack authority to detain an unknown

trespasser on her roof. He also knew because he had investigated the incident that

he and another officer had determined the arrest was the result of a

misunderstanding and that Plaintiff lacked any intent. Compare Patel v. State, 279

Ga. 750 (2005) with Glenn v. State, 310 Ga. 11 (2020) and Henderson v. State, 95

Ga. App. 830 (1957). See generally Williams v. United States, 314 Fed Appx. 253

(11th Cir. 2009) and Roberson v. Gwinnett County, 2022 WL 1415938 (N.D.

2022).

2) After being denied an arrest warrant by the Superior Court, Defendant Byars

changed the allegations in his affidavit to the Magistrate Court.  He omitted the

fact that Plaintiff was making a citizen's arrest that he and another officer had

decided the incident was a result of a misunderstanding and that the other officer

on the scene had refused to make an arrest. He omitted the fact that Plaintiff's

neighbors had assisted her in detaining the trespasser and that Plaintiff did not

know the trespasser at all, instead suggesting that Plaintiff should have known this

man on her roof was an employee of a contractor. The facts would have led any

reasonable officer to conclude that just as the Superior Court had that the

Magistrate would not have found probable cause. See Paez v. Mulvey, 915 F.3d

1226, 1286-1287 (11th Cir. 2019).

3) Defendant Catlin is liable for the malicious prosecution

of the Plaintiff because he took an active part in instigating or encouraging

Plaintiff's prosecution. See Washington, v. Howard, 25 F 4th 891, 905 (11th Cir.

2022)

4) The Court erroneously dismissed the State constitutional claims R 1-19.

Should this Court rule that Plaintiff's claims were dismissed improperly, the

Court should not have dismissed the State claims. Ancata v. Prison Health

Services, Inc. 769 F.2d 700, 706 (11th Cir. 1985).

**STATEMENT OF THE FACTS**

In Plaintiff's amended complaint (R 1-10), she alleged a claim of malicious prosecution against Defendant Byars, and Defendant Catlin (R 1-10) along with a claim of illegal arrest because of a <u>Frank v. Delaware</u>, claim.

She alleged that she was arrested pursuant to a warrant secured by Defendant Byars in Magistrate Court (R1-10-14) after his original warrant application to the Superior Court had been turned down. (R1-10-14). She was therefore arrested pursuant to a warrant for false imprisonment and misdemeanor battery (R1-18-15). The false imprisonment charge was dismissed <u>id</u>.[4]

She alleged that she had made a citizen's arrest of Mr. Mendez because he was committing the offense of criminal trespass (<u>Id</u>.).  She alleged she had delivered Mr. Mendez to her son, a licensed police officer and that Mr. Mendez was turned over to Mr. Daniels upon his arrival. (R1-10-16).

She alleged that Mr. Byars had taken out the warrant maliciously and she had been seized pursuant to legal process (R1-18).  She alleged a lack of arguable probable cause (R1-10-14 (para 3), R1-10-16(para 40). The misdemeanor charge remains deadlocked.

She further alleged a <u>Franks v. Delaware</u> violation (R1-1-19) and a claim under the Georgia Constitution (R1-1-20) against Defendant Byars (R1-10-20).

---

[4] The misdemeanor charge remains dead docketed

The Exhibits attached to the complaint showed what Mr. Byars knew when he went to secure the Magistrate Court warrant (R1-10-2 page 1). He knew that she had "not hired Mr. Mendez's employer" Id. He knew that David Tealer did not have his weapon pointed at Mr. Mendez id. page 2 the whole time. Id. Mr. Byars talked to Mr. Mendez who told him:

> Carlos advised that he told the subjects
> in English that he was working for Scott
> (Delroy) and that he was doing roofing,
> but he believe that David did not under-
> stand him.[5]

Id. at page 2. He repeated the same comment twice at page 3. Mr. Byars knew Mr. Mendez might not be the most truthful witness. Mr. Mendez's statement that David Tealer struck him was made up. Id. at page 4.

The investigation reveals that a number of neighbors helped Plaintiff detain Mr. Mendez. Id. at page 3, at page 4, at page 8. Indeed he spoke to two neighbors, Id. at 10, 11, who both identified Mr. Mendez's conduct as suspicious See R1-10-10. Mr. Byars knew that Plaintiff had claimed she acted to perform a citizen's arrest. Id. at page 5.

He knew that the officer on the scene "told him it was a misunderstanding that the family thought he was there to steal." Id. at page 7.

---

[5] At page 4, Mr. Byars twice says Mr. Mendez is unintelligible.

The affidavit in support of the Magistrate application for a Magistrate warrant (R1-10-4) page 3 accuses Plaintiff of the offense of false imprisonment. He specifically states that Plaintiff did "detain said person without legal authority" despite knowing that Plaintiff was performing a citizen's arrest. He says nothing about a misunderstanding, he says that the employee was employed at the location without saying that Plaintiff did not know this. He stated that David Tealer kept a gun on Mr. Mendez, the entire time which is untrue. He stated that David Tealer was "not on duty" which is untrue. He makes no reference to the neighbors who were present detaining Mr. Mendez (and who were not arrested) and he made no mention that the officer at the scene refused to arrest Plaintiff.

The amended complaint amplified that facts: Plaintiff had no reason to suspect anyone was on roof of her house (R1-10-5). In particular note (R1-10-7)

> Officer Daniel told Mr. Mendez that it was a "misunderstanding that while he did not know who we were, the Plaintiff and Mr. Franks did and knew who he was and believed he was burglarizing Plaintiff.

Plaintiff also alleged a claim against Defendant Catlin since he had the power, authority, and latitude to direct and redirect the case correctly (R1-10-11-12 and R1-10-13 and R1-10-16).

Plaintiff alleged in paragraph 38 of her complaint (R1-10-15) that she had

performed a citizen's arrest and (paragraph 39) that she had delivered Mendez to

the police. Of the complaint (R1-10-16) specifically noted:

> Each Defendant actually had knowledge
> of facts and circumstances set out above
> which conclusively established affirmation
> defense [sic.]...or even [arguable] probable
> cause.

Indeed as Defendant Byars notes at page 5, (R1-10-Ex. B) in the statement that she

provided by email, Plaintiff noted that Mr. Mendez was a trespasser, explained

why she thought so and specifically stated:

> Under Ga. Code 17-4-60, I have a right
> to arrest an offender of the offense was
> committed in my presence. It was (Id. at page 6)

## V. ARGUMENT AND CITATION OF AUTHORITY

### A. DEFENDANT BYARS DELIBERATELY MISLED THE MAGISTRATE BY MISSTATING THE FACTS OR BY OMITTING CRUCIAL FACTS, WHEN HE KNEW THE ARREST LACKED ARGUABLE PROBABLE CAUSE

Plaintiff was arrested for violation of O.C.G.A. §16-5-41 (a).[6]

In Carter v. Butts County, 821 F.3d 1310 (11th Cir. 2014) the Court held at

1320-1321 (11th Cir. 2016) that there was a "common thread running through all

these offenses...a level of authority: a lack of authority to be at or inside the

---

[6] And a misdemeanor which is presently dead docketed.

property and a lack of authority to remove the Property's contents. "This Court has summarized Carter as follows:" (finding that officer was not entitled to qualified immunity with respect to claim that he had arrested Plaintiffs for Georgia property crimes without probable cause where summary judgment record indicated officer should have known not all elements of the criminal had been met) Baxter v. Robert 54 F 4th 1241 (11th Cir. 2022). To be sure, these are warrantless arrest cases. See Washington v. Howard, 25 F-4th 891, 906 (11th Cir. 2022); I Williams v. Aguirre, 956 F.3d 1147, 1165 (11th Cir. 2020).

In Paez v. Mulvey, 915 F.3d 1276 (11th Cir. 2019) the Court noted, "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was committed, the presence of some conflicting evidence on a probable defense will not vitiate a finding of probable cause. "The touchstone remains the reasonableness of the officer's conduct." (emphasis added)

It seems to Plaintiff that the Court is simply engaging in a Carroll v. United States 267, 132, 162 (1925) see District of Columbia v. Wesby, analysis. [7]See Estate of Dietrich v. Burrows, 167 F.3d 1007, 1012 (6th Cir 1999) as cited in Williams v. Sirmons, 307 Fed Appx. 354, 358-359 (11th Cir. 2009) In Dietrich, the Court noted that "at the time of the .....arrest, that the Plaintiffs were justified by statute-in carrying concealed weapons during their work, the Court held that

Defendant police officers lacked probable cause to believe that plaintiff had

violated the law. See Harris v. City of Saginaw, Michigan, 62 F.4th 1028 (6th Cir.

2023).

Similarly, Defendant Byars was well aware of the citizen's arrest statute,

since repeated because of the tragic and senseless death of Armond Aubrey. He

had been murdered by citizens who claimed they were making a citizen's arrest.

The murder happened February 23, 2020 about three weeks before the arrest of

Plaintiff, an event which flooded the news media.

So the question is whether former O.C.G.A. §17-4-60 prohibited

Defendant's actions. In Carter v. State, 269 Ga. 891 (1998) the Court noted:

> Although a private person may make a
> citizen's arrest under O.C.G.A. §17-4-60,
> only forces that is reasonable under the
> circumstance may be used to restrain the
> individual arrested.

Compare Sirmons supra with Tarrestad v. State, 261 Ga. 605, 606 (1981)

Indeed in Solomon v. Brown, 218 Ga. (1962), the Supreme Court denied a

writ of mandamus to a person seeking to enforce liquor laws the reason was

straight forward. The Plaintiff had a remedy at law, he could make a citizen's

arrest.

> A further remedy available to Plaintiff
> is that of citizen's arrest. The law provide
> that a private person may arrest an offender
> if the offense is committed in his presence or

within his immediate knowledge.

Id. at 509.

One would hardly expect the Supreme Court to tell citizens to employ a remedy guaranteed to get them arrested. See also Southern LNG Inc. v. Mac Ginnistri, 294 Ga. 657 f. 16 (2014); Roberson v. Gwinnett County, 2022 WL 141 5938 (N.D. Ga. 2022).  See also Luke v. Gulley, 50 F.4th 90, 95 (11th Cir. 2022).

This Court has explained the law of citizen's arrest in Williams v. State 324 Fed. Appx. 253 (11th Cir. 2009).

While the unreported case may not be clearly established law, the Georgia case law it cites constitutes a "robust consensus of cases of persuasive authority." District of Columbia supra, 138 S. Ct. 577, 590-591 (2018); if it doesn't, then the Georgia Supreme Court cases cited herein do.

## B. DEFENDANT CATLIN IS LIABLE BECAUSE OF HIS INVOLVEMENT IN THE PROSECUTION OF PLAINTIFF AND HAS NO QUALIFIED IMMUNITY

In the instant case, Defendant Catlin is liable for the failure to intervene and does not have qualified immunity.  A good place to start is Nesmith v. Alford, 318 F. 2d 110 (5th Cir. 1963) which involved both malicious prosecution and false imprisonment. [8] This Court's predecessor noted:

---

[8] It is equally clear that the person accountability of each of the three officer Defendants was established as a matter of law with respect to some of these

> Certainly there are instances, such as 'chain of command' situations in <u>Nesmith</u> in which imposing liability for another's actions appropriate, but then the instant case is not one of them.

Compare  <u>Dean v. Gladney</u>, 621 F. 2d 1331, 1339(5th Cir. 1980).

In <u>Sims v. Forehand</u>, 112 F. Supp. 2d 1260, 1274 (M. D. Ala. 2000) the Court applied qualified immunity principles to decide "that law enforcement officers who are present at the scene and observe another officer violate an individual's constitutional rights may be liable under §1983 for non-feasance." The Court was relying on analogous principles under failure to intervene in excessive force cases. <u>See</u> <u>also</u> <u>Anderson v. Cornejo</u>, 284 F. Supp. 2d 1008, 1031 (N. D. Ill. 2003); <u>Sims v. Glover,</u> 84 F. Supp. 2d 1273, 1282 (M. D. Ala. 1999); <u>Knox v. Wainscott,</u>  2003 WL 21148973 (N. D. Ill. 2003) slip at 6; <u>Bledsoe v. Carreno,</u> 53 F. 4th 589, 616 (10th Cir. 2020).

In <u>Brinkley v. City of Detroit, Michigan</u>, 902 F. 2d 552 (6th Cir. 2018), the Court noted at 564-566 that it was clearly established that an officer must intervene when "the officer observes or has reason to know" "that a citizen [is being] unjustly arrested" and that the duty "was stated in precedent 'clear enough that

---

violations.  Thus, as we pointed out in Part III, the arrest and imprisonment of the Plaintiffs without warrant was both unlawful and participated in by each of the three Defendants, Sullivan, Ruppenthal, and Alford.  It also constituted a flagrant violation of federal Civil Rights.  Each of these Defendant participated in this action and each is liable individually to the Plaintiffs for the full damages occasioned by such conduct. Consequently, the Plaintiffs were to this extent likewise entitled to an instructed verdict." <u>Id.</u> at 125.

every reasonable official would interpret it to establish this rule' ", citing District of Columbia v. Wesby, 138 S. Ct. 572, 580 (2018).

To the same effect is Anderson v. Branen, 17 F. 3d 552, 557 (2nd Cir. 1994), relying inter alia on Byrd v. Clark, 783 F. 2d 1002, 1007 (11th Cir. 1986); Bledsoe v. Carreno, 53 F. 4th 589, 616-627 (11th Cir. 2022).

It is true that this Court has refused to allow a failure to intervene claim in non-excessive force cases. See Livers v. Schenck, 700 F. 3d 340 (8th Cir. 2012), citing Jones v. Cannon, 174 F. 3d 1271, 1286 (11th Cir. 1999).

Respectfully, appellant believes that the Court's decision in Cannon has been impacted by more recent Supreme Court decisions.

> This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful …but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Hope v. Pelzer, 536 U. S. 736, 739 (2002). "The reasoning, although not the holding" of Byrd v. Clark and progeny "sent the same message to reasonable officers in [this] circuit. Id. at 743. Accord, Taylor v. Riojas, 141 S. Ct. 52 (2020). See Holloman ex rel. Holloman v. Harland, 370 F 3d 1252, 1277 (11th Cir. 2004); Hunter v. City of Leeds, 941 F. 3d 1265, 1281 (11th Cir. 2019); Salvato v. Miley, 790 F. 3d 1286, 1294 (11th Cir. 2015). [9]

---

[9]  Plaintiff is aware of such cases as City of Tahlequah v. Bond, 142 S. Ct. 9 (2021), per curiam cases that do not comport to overrule Hope or Riojas.  Indeed,

Alternatively, Mr. Catlin has liability because he was a supervisor.

The allegations at paragraph 25 and 31 (R1-10) set out what Mr. Catlin, who was the assistant chief, knew about the facts of this case. He knew what information was to be taken to the Court. The inference is that he knew that the Superior Court Judge refused to sign the warrants and that a warrant could be submitted to another judge. He knew what was revealed in Exhibits C & E. What the relevance of such information is has been thoroughly discussed above.

As the Court noted in Washington v. Howard, 25 F. 4th 891, 906 (11th Cir. 2022):

> To be liable for malicious prosecution at common law, the prosecution need not have personally obtained the warrant from the magistrate. It was enough that he set the machinery of the law in motion whether he did the act himself or procured another to do it.

Both Prosser, Law of Torts, 4th Ed. (1971) and Prosser and Keaton on Torts, (5th Ed. 1984) note at Section 119 that:

> the Defendant cannot be held responsible merely because of approval or silent acquiescence in the acts of another.

but he is liable if

> he takes some active part in instigating or encouraging

---

with the citation of Wesby, the Sixth Circuit in Brinkley, supra, is anticipating the Bond standard. See also Darlow v. Babineck, 2022 WL 15345444 (11th Cir. 2022), slip at 3.

the prosecution. [10]

This Defendant may not have set the machinery in motion but he did nothing to stop it, although he knew the warrant contained <u>Franks'</u> violations and that a reasonable officer could not have believed probable cause existed.

As the Court noted in <u>Brown v. Crawford</u>, 906 F.2d 667, 671 (11th Cir. 1990) there is supervisory liability when the supervisor participates in the alleged constitutional conduct or when there is a counsel connection between the actions of the supervisor and the constitutional violation.

In <u>Keating v. City of Miami</u>, 598 F.3d 753, 765 (11th Cir. 2010) the Court noted:

> A failure to stop claim under a theory of supervisory liability, which does not require such allegations. A failure to stop claim under a theory of supervisory liability only requires that the supervisor (1) have the ability to prevent or discontinue a known constitutional violation by exercising his or her authority over the subordinate who commits the constitutional violation, and (2) subsequently fails to exercise that authority to stop it.

Under the above-principles he is also liable for the malicious prosecution of Plaintiff. <u>See</u> paragraph . (    ) The clear inference of this paragraph particularly the last sentence is that Mr. Catlin knew that Plaintiff was acting as a law

---

[10] In the 4th edition, the two quotes appear at page 876; in the 5th edition, they appear at 872.

enforcement officer and thus not only was there no reason to allow the warrant to be taken out, but that he knew the facts did not amount to probable cause or arguable probable cause.  For purposes of a F.R.C.P. 12 (b) (6), Plaintiff's allegations are accepted as true and all references are drawn in his favor. Chesser v. Sparks, 248 F. 3d 1117, 1121 (11ᵗʰ Cir. 2001).

Plaintiff has stated a claim against the Defendant for malicious prosecution and false imprisonment under federal law.

## C. THE COURT ERRONEOUSLY DISMISSED THE GEORGIA CONSTITUTIONAL CLAIM

Should the Court determine that the federal claims were properly dismissed, then the state claim was properly dismissed. Otherwise, the Court erred. Compare Ancata v. Prison Health Services, Inc., 769 F.2d 700, 706 (11ᵗʰ Cir. 1985) with Hollenshed v. Shadruk, 95 Ga. App. 88, 90 (1957) with Long v. Jones, 208 Ga. App. 798, 800 (1993).

## VI. CONCLUSION

The District Court erred in dismissing Plaintiff's claims for malicious prosecution and illegal arrest and in dismissing the state constitutional claim without prejudice.  Her decision should be reversed.


Respectfully submitted,

/s/Ralph Goldberg
Ralph Goldberg
Georgia Bar No. 2994375
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in F.R.A.P. 32(f).  According to the word count of commercial software, this brief contains 4,234 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

Respectfully submitted,

/s/Ralph Goldberg

Ralph Goldberg

Georgia Bar No. 2994375

Attorney for Plaintiff-Appellant

**Goldberg & Cuvillier, P.C.**

3469 Lawrenceville Hwy., Suite 102

Tucker, Georgia 30084-6919

(770) 670-7343

(770) 670-7344 (FAX)

attorneygoldberg@hotmail.com

## CERTIFICATE OF SERVICE

The undersigned has on this 27th day on April, 2023, served a true and correct copy of the Appellant's Brief upon all counsel of record via the Court's CM/ECF system, addressed as follows:

Rebecca J. Dobras

1300 Commerce Dr. 5th Floor

Decatur, Ga. 30030

rjdobras@dekalbcountyga.gov

/s/Ralph Goldberg

Ralph Goldberg

Attorney for Appellant

Ga. Bar No. 202922

Goldberg & Cuvillier, P.C.

3469 Lawrenceville Hwy., Ste. 102

Tucker, Ga. 30084

770-670-7343

FAX 770-670 7344

attorneygoldberg@hotmail.com